Ronald E. Coleman, J.
The claims were timely filed and have not been submitted to any other court or tribunal for audit or determination. It was stipulated on the trial that the three claims were to be tried together. On December 2, 1962 at about 9:30 a.m., the claimant Elizabeth Lindner was operating an automobile owned by her husband Karl Lindner, with him as a passenger, in a northerly direction on State Highway Route 42 in the Town of Lexington, Greene County. On Route 42 there is an area known locally as West Kill Notch. As the claimants approached this area they were proceeding downgrade and drove around a curve to the left and then one to the right. While coming out of the curve to the right, the automobile skidded on ice which covered the pavement, went across the road and off the westerly side coming to rest against some guardrails and the automobile was partially in the southbound lane and on the shoulder throwing the claimants out onto the pavement. Both were seriously injured and required extensive hospital and medical care. The claim made was for the alleged negligence of the State for allowing the icy condition to exist as well as negligence in constructing the highway and not properly signing the curves.
In the area of the accident Route 42 had been resurfaced in 1962 with asphalt, the drainage facilities recut and the shoulders of the highway brought to the level of the pavement. At the place where the accident happened there was a steep hill adjacent to the highway on one side and a slope on the other with woods all of which shaded the highway. As a result, the sun *910 did not reach this area of the road until some time after 2 o’clock in the afternoon. When there were periods of moderate weather during the Winter months, water would accumulate on the highway and freeze during the night. Greene County did the snowplowing but employees of the State of New York sanded the road. The accident happened on a Sunday morning and the State’s light maintenance foreman testified that while the roads were inspected on every workday during the Winter months, no inspection was made of the roads on Saturday or Sunday, According to him the Rules of the Department of Public Works did not require that any inspection be made on Saturdays and Sundays and they only sanded roads on these days when they were called to do so. Why this should be so during Winter months was not explained. On the day of the accident all the highways were dry and clear except at the place where the accident happened.
There was a patch of ice on the highway at the point where the accident happened which extended for 150 yards each side of where the claimant’s automobile came to rest. This condition covered both lanes of the highway and was described both as an icy condition and a frosty condition but there was no question but what it was slippery on the day of the accident. On this record we find that the State knew or should have known of this dangerous condition when there were periods of moderate weather and thawing such as had taken- place on the days prior to the accident. A proximate contributing cause of the accident was the State’s negligence in failing to erect signs to warn of a dangerous condition and in failing to sand the icy surface on the day of the accident prior to its occurrence. (Fincher v. State of New York, 19 A D 2d 762.)
There was opposing proof made by the claimants and the State in respect to the proper construction of the highway and whether the curve and speed signs in place ahead of the left hand curve gave adequate warning of the double curve. In view of our determination, we do not find it necessary to pass upon these claimed acts of negligence.
The question of whether Mrs. Lindner has proved by a fair preponderance of the credible evidence her freedom from contributory negligence presents a more difficult problem. Mrs. Lindner was asked and testified as follows:
“ Q. Now when you rounded the curve, you came upon the ice in the highway; what did you do? A. I braked down and when the car went over on the guardrail I was thrown out. I didn’t know nothing any more.” No further explanation was given as to when and where Mrs. Lindner applied- the brakes *911 except that after the car started to skid she did not apply the brakes. The State Trooper who made an investigation of the accident testified that the ice covered the entire road for a distance of approximately 300 yards. When he arrived at the scene of the accident he found the car against the guardrail at a point which was midway between the beginning and the ending of the ice patch. He observed skid marks leading back from the automobile a distance of approximately 100 feet. Talcing her testimony together with the physical facts, Mrs. Lindner must have traveled approximately 300 feet on the ice before she applied her brakes. Why she applied the brakes when she did was not explained. It was her burden to prove her freedom from contributory negligence and upon her testimony and the physical circumstances surrounding the accident we find that she has failed to prove by a fair preponderance of the credible evidence her freedom from contributory negligence. Accordingly, her claim must be and hereby is dismissed.
The claimant Karl Lindner, her husband, owned the automobile. It is urged upon us that her negligence is imputable to him and accordingly his claim must be dismissed. In Gochee v. Wagner (257 N. Y. 344) an owner brought an action against a third party for injuries sustained by him while a passenger in his automobile being driven at the time by his wife. The court there held that it was his automobile and ‘ ‘ he was present and had the legal right to control its operation, and the negligent conduct of the driver was imputable to him ” (p. 348). The court there said ‘ ‘ Concededly, the wife was a mere gratuitous bailee of the car having the privilege of driving it in the absence of the respondent ” (p. 347). A reading of the record in that case shows that the owner did drive. The decision is distinguishable from the facts in the claim here before us.
Here, Mr. Lindner never had driven an automobile and did not have a driver’s license. While it was registered in his name it was driven only by his wife. When we say that a person has the legal right to control the operation of an automobile, it seems implicit in that fact that the person could drive or knew how to drive which might have been shown by the fact that the person possessed a driver’s license. We do not see how it can be said that Mr. Lindner had the legal right to control the operation of his automobile when he never had driven an automobile nor was it shown that he knew how to operate an automobile.
The application of the doctrine of imputable negligence depends upon the circumstances involved and must yield to reason. (See Kupchinsky v. Vacuum Oil Co., 238 App. Div. *912 457, affd. 263 N. Y. 128.) To say a person who never has driven nor was licensed to drive an automobile had the legal right to control the operation of an automobile being driven by an experienced and licensed driver is not in the interest of public safety. We cannot ignore completely the practical considerations involved in the operation of vehicles on the highways and find that he could have exercised control over the operation of the automobile. (See Jenks v. Veeder Contr. Co., 177 Misc. 240, mod. 264 App. Div. 979, affd. 290 N. Y. 810.) Whether or not the claimants were engaged in a joint venture is not important. Whatever their ultimate object was had nothing to do with the negligence or imputation of negligence herein. The determining factor upon imputed as distinguished from actual negligence, rests here upon a determination whether Karl Lindner at the time of the accident could have done anything. He could not have. No negligent act of omission or commission on his part contributed to the accident. Karl Lindner has proved by a fair preponderance of the credible evidence his freedom from contributory negligence.
As a result of the accident, Karl Lindner, 64 years old, sustained a closed fracture of both bones left mid-forearm, cerebral concussion, lacerated right hand, arteriosclerotic peripheral vascular disease, varicose ulcer right leg, superficial thrombophlebitis right thigh, general contusions and abrasions. He was confined to the hospital from December 2-31, 1962 and from February 20-21, 1963. The closed fracture of the left mid-forearm required an open reduction, a thread wire was passed through the ulnar bone and a plate fixed to the radial bone. In addition, a bone graft was taken from the left iliac crest of the hip and applied to the fracture site. A long plastic arm cast was applied which was removed on February 20, 1963 and a short cast applied which was removed some time prior to March 29, 1963. His attending physician saw him for the last time on May 6, 1963 at which time he still had some limitation in the range of his right forearm which was improving. At that time his ordinary course of treatment was not completed and he recommended a program of physical therapy. Unfortunately, this was the extent of the medical testimony in respect to any permanency of the injuries sustained by the claimant. He, together with his wife, operated a bakery business from which they earned together approximately $2,000 a year. The business was closed for a period of four months following the accident. Karl Lindner had a doctor bill of $410, a hospital bill of $886.50 and loss of earnings of $300 for a total of $1,596.50. We award to the claimant $6,000 for his injuries.
*913 Claimant Karl Lindner in Claim No. 41988 is entitled to have judgment entered in the amount of $7,596.50.
Claim No. 41989 entitled Elizabeth Lindner against the State of New York is dismissed.
Claim No. 41990 entitled Karl Lindner against the State of New York, which is a derivative action for medical expenses and loss of services of his wife, is dismissed.